IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WILLIAM R. KOWALSKI; HAWAII           )    Civil NO. 11-00795HG-BMK
INTERNATIONAL SEAFOOD, INC.,          )
                                      )
              Plaintiffs,             )
                                      )
        vs.                           )
                                      )
ANOVA FOOD, LLC; ANOVA FOOD,          )
INC.; CLEARSMOKE TECHNOLOGIES,        )
LTD; and DOES 1-10,                   )
                                      )
                                      )
              Defendants.             )
_____        )
—

## CLAIM CONSTRUCTION ORDER

On October 26, 1999, Plaintiff William R. Kowalski was issued United States Patent No. 5,972,401, entitled "Process For Manufacturing Tasteless Super-Purified Smoke For Treating Seafood To Be Frozen And Thawed." The patent contains Claims 1 through 75. On November 16, 2010, Claims 1 and 67 were cancelled.

On December 29, 2011, Plaintiffs Kowalski and Hawaii International Seafood, Inc. filed the current suit for patent infringement, false advertising and promotion pursuant to the Lanham Act, and violation of state statutes. Plaintiffs allege that Defendants have processed, imported, offered to sell, or sold food made with a process covered by Kowalski's

1

patent.   Defendants Anova Food, LLC and Anova Food, Inc.
assert that they do not use a process that is covered by
Kowalski's patent.

The Parties requested a claim construction hearing
pursuant to Markman v. Westview Instr., Inc., 517 U.S. 370,
372 (1996).   On February 25, 2014, the Court held a Markman
hearing on the construction of disputed terms in the patent.

## PROCEDURAL HISTORY

On January 2, 2012, Plaintiffs William R. Kowalski and
Hawaii International Seafood, Inc. filed the First Amended
Complaint.  (ECF No. 6).

On October 11, 2013, Defendant Anova Food, LLC filed a
document entitled, "PROPOSED TERMS AND CLAIM ELEMENTS FOR
CONSTRUCTION."  (ECF No. 224).

On November 1, 2013, Plaintiffs William R. Kowalski and
Hawaii International Seafood, Inc. filed a "LIST OF TERMS FOR
CONSTRUCTION."  (ECF No. 231).

Also on November 1, 2013, Defendant Anova Food, Inc.
filed a "JOINDER IN DEFENDANT ANOVA, LLC'S PROPOSED TERMS AND
CLAIM ELEMENTS FOR CONSTRUCTION."  (ECF No. 232).

On December 16, 2013, Plaintiffs filed a Claim
Construction Brief.  (ECF No. 245).

On December 30, 2013, Defendant Anova Food, Inc. filed a Claim Construction Brief.  (ECF No. 250).

On the same date, Defendant Anova Food, LLC filed a Claim Construction Brief.  (ECF No. 251).

On January 13, 2014, Plaintiffs William R. Kowalski and Hawaii International Seafood, Inc. filed its Reply Claim Construction Brief.  (ECF No. 258).

On January 27, 2014, Defendant Anova Food, LLC filed a Responsive Claim Construction Brief.  (ECF No. 265).

On January 27, 2014, Plaintiffs William R. Kowalski and Hawaii International Seafood, Inc. filed a Witness List for the Claim Construction Hearing.  (ECF No. 266).

On January 28, 2014, Defendant Anova Food, Inc. obtained new counsel.  (ECF No. 270).

On January 30, 2014, Plaintiffs William R. Kowalski and Hawaii International Seafood, Inc. filed Exhibits for the Claim Construction Hearing.  (ECF No. 275, 276).

At the claim construction hearing on February 3, 2014, Defendant Anova Food, Inc. made an oral motion to continue the claim construction hearing because it had retained new counsel.  (ECF No. 277).  The Court granted the motion and continued the hearing until February 25, 2014.  (Id.)

The Court set a new briefing schedule and ordered the

parties to agree to a list of no more than fourteen claim terms to be construed.  (<u>Id.</u>)

On February 18, 2014, Plaintiffs filed a claim construction brief.  (ECF No. 288).

On the same date, Defendant Anova Food, Inc. filed a claim construction brief.  (ECF No. 287).

Defendant Anova Food, LLC also filed a claim construction brief.  (ECF No. 286).

On February 25, 2014, the Court held a <u>Markman</u> hearing on the construction of disputed terms in the patent.  (ECF No. 296).

## LEGAL STANDARD

Claim construction is a question of law.  <u>Markman v. Westview Instr., Inc.</u>, 517 U.S. 370, 372 (1996).  Terms contained in claims are "generally given their ordinary and customary meaning."  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  <u>Id.</u> at 1312.

Intrinsic evidence determines the meaning of disputed claim terms when the meaning is not immediately apparent.  <u>Id.</u>

at 1314.   Intrinsic evidence includes the words of the claims themselves, the patent specification, and, if in the record, the prosecution history.   Id.; Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

"The appropriate stating point ... is always with the language of the asserted claim itself." Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998).   Claim terms are considered in the context in which they are used, including the language of other claims of the patent. Vitronics Corp., 90 F.3d at 1582.

Consideration of the specification is also essential and forms "the primary basis for construing claims." Phillips, 415 F.3d at 1315.   The specification may reveal a special definition given to a claim term by the patentee or an intentional disclaimer or disavowal of claim scope by the inventor.   Id. at 1316.

The patent's prosecution history may "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. at 1317.

Extrinsic evidence, such as dictionaries, technical treatises, or expert testimony, may be considered if such

5

sources are helpful to determine the true meaning of claim

terms.  Phillips, 415 F.3d at 1318.  Extrinsic evidence may

aid claim construction but it cannot be used to contradict the

plain and ordinary meaning of a claim term as defined within

the intrinsic record.  Id. at 1322-23.

### ANALYSIS

The Parties request the construction of a total of 19

claim terms in United States Patent No. 5,972,401 (" '401

Patent").

Plaintiffs William R. Kowalski and Hawaii International

Seafood, Inc. ("Plaintiffs") and Defendant Anova Food, LLC

("Defendant Anova LLC") want 19 claim terms construed and list

them in the same order in their claim construction briefs.

(ECF No. 286 at pp. 5-6; ECF No. 288 at pp. 10-11).

Defendant Anova Food, Inc. ("Defendant Anova Inc") wants

only 17 claim terms construed but its list of the terms it

wants construed is provided in a different order.  (ECF No.

287 at pp. 7-11).

Defendant Anova Inc does not agree with all of the

proposed claim constructions of Defendant Anova LLC.  (ECF No.

286 at pp. 5-6; ECF No. 287 at pp. 7-11).

The Order adopts the sequence of terms in the lists

provided by Plaintiffs and Defendant Anova LLC.  Defendant

Anova LLC joined in some of Defendant Anova Inc's arguments and requested the same constructions for many claim terms. When Defendant Anova Inc and Defendant Anova LLC disagree on a claim term's construction, both proposed claim constructions are set out and analyzed.

## I.        CONSTRUING TERMS 1-4

Terms 1-4 all concern the adjective "smoked" as used to modify the terms "odor," "taste," "flavor," and "flavoring" in the '401 Patent.  The Parties grouped the terms together and addressed them collectively in their claim construction briefs and at the <u>Markman</u> hearing.

**TERM 1: smoke odor**
**TERM 2: smoke taste**
**TERM 3: smoke flavor**
**TERM 4: smoke flavoring**

"Smoke odor" is found in Claims 1, 13, 27, 39, 68, 69, 74, and 75.

"Smoke taste" is found in Claims 1, 27, 49, 50, and 74.

"Smoke flavor" is found in Claims 13, 27, 39, 68, 69, and 75.

"Smoke flavoring" is found in Claims 69 and 75.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
| --- | --- | --- |

| smoked or smoky odor | any odor present in and/or imparted by the smoke | Joins in the requested claim construction of Anova Inc |
| smoked or smoky taste | any taste present in and/or imparted by the smoke | |
| smoked or smoky flavor | any flavor present in and/or imparted by the smoke | |
| smoked or smoky flavoring | any flavoring present in and/or imparted by the smoke | |

Plaintiffs' proposed constructions of "smoke odor," "smoke taste," "smoke flavor" and "smoke flavoring" as used in the '401 Patent are adopted.

"Smoke odor" is construed as "smoked or smoky odor."

"Smoke taste" is construed as "smoked or smoky taste."

"Smoke flavor" is construed as "smoked or smoky flavor."

"Smoke flavoring" is construed as "smoked or smoky flavoring."

### 1.   Intrinsic Evidence

#### a.   Claim Terms

Claim terms must be construed in light of the appropriate context in which they are used.  Aventis Pharmaceuticals Inc. v. Amino Chemicals Ltd., 715 F.3d 1363, 1373 (Fed. Cir. 2013).

8

A patent claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.  <u>Rexnord Corp. v. Laitram Corp.</u>, 274 F.3d 1336, 1342 (Fed. Cir. 2001).  Different terms in separate patent claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading of the terms is proper. <u>Nystrom v. TREX Co., Inc.</u>, 424 F.3d 1136, 1143 (Fed. Cir. 2005).  Two patent claims with different terminology can define the exact same subject matter.  <u>Curtiss-Wright Flow Control Corp. v. Velan, Inc.</u>, 438 F.3d 1374, 1380 (Fed. Cir. 2006).

Plaintiff's proposed construction for the adjective "smoke" as "smoked or smoky" is consistent with the plain language of the claims.  The construction is also consistent with the context in which the adjective "smoke" is used, including the language of other claims of the patent.  Claims 46, 49, 50, 64, 74 and 75 in the '401 Patent refer to a process that results in a product without a "smoked" or "smoky" taste or flavor.  (Ex. 1, '401 Patent at column 26, line 3 ("26:3"), 26:21, 26:28, 27:49; Reexamination Certificate at 2:9-10, 2:19-20, ECF No. 288).

Defendants Anova Inc and Anova LLC are attempting to

expand the definition to include a wide variety of possibilities.  Defendants' proposed constructions are contrary to the Claim Terms, the Specification, the Prosecution History, and the Extrinsic Evidence.

Defendants propose that the Court construe the adjective "smoke" to mean *any* odor, taste, flavor, or flavoring present in and/or imparted by the smoke.

Defendant Anova Inc asserts that "smoke" must be presumed to have a different meaning than "smoked or smoky," citing Helmsderfer v. Bobrick Washroom Equipment, Inc., 527 F.3d 1379, 1382 (Fed. Cir. 2008) (explaining that different claim terms are presumed to have different meanings).  In Helmsdefer, the Federal Circuit Court of Appeals found that "generally" and "partially" were presumed to have different meanings based on the doctrine of claim differentiation.

The Federal Circuit Court of Appeals has cautioned that "claim differentiation is a guide, not a rigid rule." Curtiss-Wright Flow Control Corp., 438 F.3d at 1381.  The appellate court has explained that claim drafters often use different terms to define the exact same subject matter.  Id. Claim differentiation "can not broaden claims beyond their correct scope."  Kraft Foods, Inc. v. International Trading Co., 203 F.3d 1362, 1368 (Fed Cir. 2000).

10

The '401 Patent Claims themselves demonstrate that Kowalski uses the terms "smoke," "smoked" and "smoky" to define the exact same subject matter.   Pickholtz v. Rainbow Technologies, Inc., 284 F.3d 1365, 1373 (Fed. Cir. 2002) (finding that the patent uses the terms "computer" and "computer system" as synonyms).

Claims 49 and 50 use the modifier "smoke" and "smoky" interchangeably as the claims describe a process that removes "smoke taste compounds" in order to create a product that does not have a "smoky taste."  (Ex. 1, '401 Patent at 26:18-21, 26:25-28, ECF No. 288).  Claims 74 and 75 use the modifier "smoke" and "smoked" interchangeably.  (Ex. 1, Reexamination Certificate at 1:27, 2:9-10, 2:14-15, 2:19, 2:23-24, ECF No. 288).  The '401 Patent uses the word "smoke" as an adjective the same way it uses the modifiers "smoked" and "smoky." "Smoked" and "smoky" are merely variations of the word "smoke."

It would be error to follow the Defendants' attempt to broaden the term "smoke" to mean all odors, tastes, flavors, and flavorings.  Kraft Foods, Inc., 203 F.3d at 1368.

### b.   The Specification

Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are

11

more likely to support a limiting definition of a claim term. C.R. Bard, Inc. v. United States Surgical Corp., 388 F.3d 858, 864 (Fed. Cir. 2004).

The Specification supports Plaintiffs' construction of the adjective "smoke." The '401 Patent Specification describes the invention as a whole as a process that imparts no "smoky" or "smoked" taste or flavor. (Ex. 1 at 3:23, 4:27, 12:6, ECF No. 288). The Specification explains that the intention of the patent is to produce seafood that "appears and tastes similar to fresh after it is frozen and thawed." (Id. at 1:30).

### c.   The Prosecution History

The prosecution history of a patent provides guidance for when a patent term should be read to deviate from its ordinary meaning because of the way the patent was distinguished from the prior art in the field. Vitronics, 90 F.3d at 1582. A patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution. Purdue Pharma L.P. v. Endo Pharms, Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006). An alleged disavowal of claim scope will not limit the scope of a claim if the disavowal is ambiguous. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Defendant Anova Inc provided a copy of the Prosecution History of the '401 Patent at Exhibit B.  (Defendant Anova Food, Inc.'s Revised Claim Construction Brief filed February 18, 2014, ECF No. 287); Vitronics Corp., 90 F.3d at 1582 (explaining that the court may consider the prosecution history of the patent, if it is in the record).  An examination of the Prosecution History provides further support for Plaintiffs' proposed construction of the adjective "smoke" as "smoked or smoky."

### (i) Notice of Allowability

In the June 17, 1999, Notice of Allowability, the Patent Examiner stated the reasons for allowing the patent as follows: "the claimed process for treated food defines over the prior art of record by comprising the steps of generating smoke, removing smoke odor and/or taste compounds from said smoke, and treating a food with said smoke such that the food does not retain a smoky odor or taste."  (Ex. B at p. 221, ECF No. 287).

The Notice of Allowability makes clear that a person of ordinary skill in the art would have understood the scope of the '401 Patent to cover a process that imparts no "smoky" odor or taste, rather than a process that imparts no taste at all.  Phillips, 415 F.3d at 1313.

13

### (ii) Maga Document

Defendant Anova Inc bases its argument on a 1988 non-patent, prior art document entitled, "Smoke in Food Processing" authored by Joseph A. Maga ("Maga Document"). (ECF No. 287 at p. 35; Ex. D).  Plaintiff Kowalski provided the Maga document to the Patent & Trademark Office ("PTO") and cited it as prior art in the '401 Patent.  (Ex. B at pp, 125, 128, 138, 173, 177-217, ECF No. 287; Ex. 1, ECF No. 288). Plaintiff Kowalski cited the Maga document to show that a person of ordinary skill in the art would know the thresholds for imparting smoke odor and taste.  (Ex. B at p. 173, ECF No. 287).  Defendant Anova Inc argues that the Maga Document explains that the characteristic smoke smell is not limited to "smoked" or "smoky."

Defendant Anova Inc's arguments based on the Maga Document are unpersuasive.  Defendants seek to broaden the adjective "smoke" to "encompass relatively obscure definitions that are not supported by the written description or prosecution history."  Nystrom, 424 F.3d at 1145-46.  The intrinsic evidence in the record supports Plaintiffs' proposed construction of the adjective "smoke" as "smoked or smoky."

### 2.   Extrinsic Evidence

14

Judicial decisions in related proceedings may be appropriate extrinsic evidence.  <u>V-Formation, Inc. v. Benetton Group Spa</u>, 401 F.3d 1307, 1312 (Fed. Cir. 2005).  Plaintiffs rely on a previous construction of the adjective "smoke" in the '401 Patent as support for its proposed construction.  In <u>Kowalski v. Mommy Gina Tuna Resources, et al.</u>, Civ. Nos. 05-00679BMK, 06-00182BMK, 05-00787BMK, the Judge construed the adjective "smoke" to mean "traditional smoky or smoked."  (Ex. 2 at p. 17, ECF No. 288).

Just as the Defendants here, the defendants in <u>Kowalski v. Mommy Gina Tuna Resources</u> argued that the Kowalski Patent's use of the term "smoke" should be construed as imparting any odor, taste, flavor, or flavoring.  The Judge rejected the construction proposed by the defendants.  The Judge examined the Patent Claims, the Specification, the Patent Prosecution History.  The Judge found the weight of the intrinsic evidence favored the plaintiff's proposed construction over any of the extrinsic evidence.  The Judge explained that the Kowalski Patent is "properly construed to claim a process that imparts no smoked or smoky taste to the treated seafood."  (<u>Id.</u> at p. 17).

Defendant Anova LLC argues that the previous claim constructions of the '401 Patent are not relevant.  Defendant

15

Anova LLC bases its arguments on the fact that Claims 1 and 67 in the Kowalski Patent were cancelled.

The Federal Circuit Court of Appeals has explained that no deference should be given to claim construction rulings of the Patent and Trademark Office.  In re Swanson, 540 F.3d 1368, 1377-78 (Fed. Cir. 2008).  The standard of proof in a Patent and Trademark Office reexamination is preponderance of the evidence, there is no presumption of validity, and the examiner is conducting a subjective examination of the claim in light of prior art.  Id.

Claims dependent on Claim 1 are still presumed valid in this case and require construction.  35 U.S.C. § 282(a) ("Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim").  The prior construction of Claim 1 is relevant and persuasive extrinsic evidence.  V-Formation, Inc., 401 F.3d at 1312; Bloom Eng'g Co. v. N. Am. Mfg. Co., 129 F.3d 1247, 1250 (Fed. Cir. 1997) (dependent claims that are not identical in form to invalid independent claims may be asserted against defendants).

**Court's Construction of Terms 1-4**

16

The Court's construction of the terms "smoke odor," "smoke taste," "smoke flavor" and "smoke flavoring" is entirely consistent with the intrinsic evidence in the record as well as the previous construction of the '401 Patent claims in the <u>Kowalski v. Mommy Gina Tuna Resources, et al.</u> case. The Court adopts Plaintiffs' proposed construction.  The adjective "smoke" in Claims 1, 13, 27, 39, 49, 50, 68, 69, 74, and 75 is construed as "smoked or smoky."

## II.        CONSTRUING TERM 5:  smoke

"Smoke" as a noun is found in Claims 1, 11, 13, 49, 50, 60, 63, 68, 69, 74, and 75.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| the emissions from heating an organic smoking material, said emissions containing smoked or smoky taste and odor compounds | the emissions from a material undergoing combustion or pyrolysis (*i.e.* the subjection of organic compounds to very high temperatures) | Joins in the requested claim construction of Anova Inc |

The Court construes the noun "smoke" as "the emissions

from heating an organic material."

### 1.   Intrinsic Evidence

#### a.   Claim Terms

There is a presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim.  <u>Curtiss-Wright Flow Control Corp.</u>, 438 F.3d at 1380.  "The statute stresses that a dependent claim must add a limitation to those recited in the independent claim."  <u>Id.</u> (citing 35 U.S.C. § 112, ¶4).

Independent claims 1, 49, 50, 68, 69, 74, and 75 of the '401 Patent use the phrase "heating organic material to generate smoke."  (Ex. 1, '401 Patent at Claims 1, 49, 50, 68, 69, Reexamination Certification at Claims 74, 75, ECF No. 288).

Dependent Claims 70 and 71 limit the "heating step" as described in the independent claims to a process where the organic material either "combusts" or "pyrolyses."  (<u>Id.</u> at Claims 70 and 71).

The Parties agree that the noun "smoke" in the patent refers to "emissions."  Plaintiffs and Defendant Anova Inc disagree on the scope of the term.  Defendants seek to limit the term "smoke" to the processes of "combustion" or

18

"pyrolysis" as used in the Dependent Claims 70 and 71.

Construing the noun "smoke" in the '401 Patent to be limited to "combustion" or "pyrolysis" as used in the Dependent Claims would be error.  Curtiss-Wright Flow Control Corp., 438 F.3d at 1380.  Reading the limitation from Dependent Claims 70 and 71 into the Independent Claims would make Claims 70 and 71 superfluous.  Id.

Plaintiffs' construction seeks to add "smoking" and "smoky" and "smoked" to the construction of the noun "smoke." The Claim Terms themselves consistently refer to "heating organic material."  The Claims do not refer to "organic smoking material" as proposed by Plaintiffs.  The Court declines to construe "smoke" based on a lone reference to "organic smoking material" in the Patent's Abstract.  (Ex. 1 at '401 Patent, Abstract, ECF No. 288).  It is inconsistent with the Claims Terms themselves to add this modifier to the construction of "smoke."

Plaintiffs also request the Court define "smoke" as "containing smoked or smoky taste and odor compounds." Plaintiffs' construction fails to consider the context in which the term is used.  Phillips, 415 F.3d at 1314. Plaintiffs' proposed construction would lead to confusing and repetitive claim language in the patent.  Bd. Of Regents of

19

the Univ. Of Tex. Sys. v. BENQ Am. Corp., 533 F.3d 1362, 1370

(Fed. Cir. 2009) (declining to adopt a construction that would

lead to a nonsensical result).

### b.   The Specification

Interpreting a claim limitation based solely on a single

example from the specification has been repeatedly rejected by

the Federal Circuit Court of Appeals.  Marine Polymer

Technologies, Inc. v. HemCon, Inc., 672 F.3d 1350, 1370 (Fed.

Cir. 2012); Silicon Graphics, Inc. v. ATI Technologies, Inc.,

607 F.3d 784, 792 (Fed. Cir. 2010).  The appellate court has

"cautioned against limiting the claimed invention to preferred

embodiments or specific examples in the specification."  Tex.

Intruments, Inc. v. U.S. Int'l Trade Comm'n, 805 F.2d 1558,

1563 (Fed. Cir. 1986).  Varied use of a disputed term in the

written description demonstrates the breadth of the term

rather than providing a limited definition.  Johnson Worldwide

Assocs. v. Zebco Corp., 175 F.3d 985, 991 (Fed. Cir. 1999).

The preferred embodiment describes "smoke" as being the

product of either "combustion" or "pyrolysis."  (See Ex. 1,

'401 Patent at 11:58-64, "Combusting a five cylinder retort

packed with wood sawdust is the preferred embodiment described

herein.  The pyrolysis of the wood sawdust into smoke creates

byproducts of tar, moisture, and particulate residue at the

20

outlet of the smoke generating subsystems").

It would be error to limit "smoke" to the specific examples provided in the preferred embodiment and written description in the '401 Patent. <u>Silicon Graphics, Inc.</u>, 607 F.3d at 792.

### c.   The Prosecution History

The Prosecution History demonstrates that Kowalski sought to use the broad term "heating" rather than a more limited term such as "combusting."  Kowalski intentionally changed the terms "combusting" and "burning" in various claims and replaced them with "heating."  (Ex. B at pp. 71-72, 74, 76, 165-66, 168-69).  The Patent and Trademark Office approved the changes.  The Prosecution History supports the Court's construction of "smoke."

### 2.   Extrinsic Evidence

The Court's construction of the noun "smoke" is entirely consistent with the intrinsic evidence in the record. Extrinsic evidence is not required to construe the term. <u>Vitronics Corp.</u>, 90 F.3d at 1584.

### Court's Construction of Term 5: "smoke"

The dependent claim terms and the preferred embodiment

do not limit the noun "smoke" in the '401 Patent.  The term "smoke" in Claims 1, 11, 13, 49, 50, 60, 63, 68, 69, 74, and 75 is construed as "the emissions from heating an organic material."

III.        CONSTRUING TERM 6:  heating

       TERM 7:   burning

"Heating" is found in Claims 1, 11, 49, 50, 63, 68, 69, 74, and 75.  "Burning" is found in Claim 60.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| No need for construction | No need for construction | burning (organic material) at a temperature between 400 and 950 degrees Fahrenheit |

The plain and ordinary meaning of the terms "heating" and "burning" is sufficient.

    1.    Intrinsic Evidence

      a.    Claim Terms

There is a presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim.  Curtiss-Wright Flow Control Corp., 438 F.3d at 1380.

Claims 1, 49, 50, 63, 68, 69, 74 and 75 are Independent Claims that contain "heating."  Claim 60 is an Independent Claim that contains "burning."

Claim 33 is a Dependant Claim that limits heating to be "between approximately 400 degrees Fahrenheit (204 degrees Centigrade) and approximately 950 degrees Fahrenheit (510 degrees Centigrade)."

Defendant Anova LLC is the only party requesting construction of the terms "heating" and "burning."  Defendant Anova LLC proposes the same construction for each term, asserting the terms are "ambiguous."  Defendant Anova LLC requests "heating" be construed at "a temperature between 400 and 950 degrees Fahrenheit."

It would be erroneous to limit "heating" in the Independent Claims to the range indicated in one Dependent Claim.  <u>Curtiss-Wright Flow Control Corp.</u>, 438 F.3d at 1380. The Court rejects Defendant Anova LLC's proposed construction to limit "heating" or "burning" to a numerical range.  <u>Falana v. Kent State University</u>, 669 F.3d 1349, 1355 (Fed. Cir. 2012) (declining to limit the claims to a specific temperature based on the plain language of the claims).

**b.   The Specification**

23

Claims are not limited by the embodiments disclosed in the specification.  Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1328 (Fed. Cir. 2003).  The Federal Circuit Court of Appeals has stated that it "will not at any time import limitations from the specification into the claims."  CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1231 (Fed. Cir. 2005).

 Defendant Anova LLC points to the Specification that suggests the process utilize "temperatures in an operable range of 400 and 950 degrees Fahrenheit."  (Ex. 1 at '401 Patent, 11:48-49).

"[W]hen a claim term is expressed in general descriptive words, [courts] will not ordinarily limit the term to a numerical range that may appear in the written description or in other claims."  Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1249 (Fed. Cir. 1998); Conoco, Inc. v. Energy & Envtl. Int'l, L.C., 460 F.3d 1349, 1358 (Fed. Cir. 2006).

The intrinsic evidence in the record demonstrates that a person of ordinary skill in the art can understand the terms "heating" and "burning" in the context of the '401 patent. Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("a patentee need not define his invention

with mathematical precision in order to comply with the definiteness requirement").

### 2.    Extrinsic Evidence

In <u>Kowalski v. Mommy Gina Tuna Resources, et al.</u>, Civ. Nos. 05-00679BMK, 06-00182BMK, 05-00787BMK, the Judge considered nearly identical arguments regarding the term "heating" in the '401 Patent.  (Plaintiff's Ex. 3 at pp. 6-7, ECF No. 288).  The Judge determined that "heating" was not limited to any specific numerical range.  <u>Id.</u>

### Court's Construction of Terms 6 and 7

The Court need not construe a claim term if it is non-technical, is in plain English, and derives no special meaning from the patent and its prosecution history.  <u>02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.</u>, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  The "ordinary" meaning of such terms is sufficient and the Court should avoid merely paraphrasing claim language with less accurate terminology.  <u>Id.</u>; <u>Perfect Web Techs. v. InfoUSA, Inc.</u>, 587 F.3d 1324, 1332 (Fed. Cir. 2009).

The Court declines to limit the terms "heating" and "burning" in the '401 Patent to a specific numerical range.

The plain and ordinary meaning of the terms is sufficient.


IV.        **CONSTRUING TERM 8:  organic material**

"Organic material" is found in Claims 1, 49, 50, 60, 68, 69, 74, and 75.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| organic smoking material (including wood, and the sawdust, wood chips, and charcoal that can be made from wood) | carbon-containing materials, such as wood, wood sawdust, hardwood charcoal, leaves, bagasse from sugar cane, pineapple husks, and rice hulls | Joins in the requested claim construction of Anova Inc |

The Court construes the term "organic material" as "carbon-containing material."


1.    **Intrinsic Evidence**

a.    **Claim Terms**

During oral argument, Plaintiffs agreed with Defendant Anova Inc's construction of "organic" as "carbon-containing." The Parties disagree about the use of the modifier "smoking" along with the examples listed after "material."

Plaintiffs' construction seeks to define "organic

material" as "organic or carbon-containing <u>smoking</u> material."
The Claim Terms themselves do not refer to "organic smoking
material."  (Ex. 1, '401 Patent at Claims 1, 49, 50, 68, 69,
Reexamination Certification at Claims 74, 75, ECF No. 288).
The Claims refer only to "organic material."  The Court
declines to add "smoking" to the construction of "organic
material" based on a lone reference to "organic smoking
material" in the 401 Patent's Abstract.

### b.    The Specification

Claims are not limited by the embodiments disclosed in
the specification.  <u>Amgen Inc.</u>, 314 F.3d at 1328.  Courts
should not limit a claim based solely on a single example from
the specification.  <u>Silicon Graphics, Inc.</u>, 607 F.3d at 792.

The Specification lists a number of examples of organic
material including wood, hardwood charcoal, wood sawdust,
leaves, bagasse from sugar cane, pineapple husks, and rice
hulls.  (Ex. 1, '401 Patent at 6:43, 7:47-48, 15:65-66, 16:33,
16:48, 16:60, ECF No. 288).  Plaintiffs and Defendant Anova
Inc each request different constructions of "organic material"
to include some of the examples used in the Specification as
part of the definition.

It is "not enough that the only embodiments, or all of

the embodiments, contain a particular limitation to limit a claim term beyond its ordinary meaning." <u>Aventis Pharma S.A. v. Hospira, Inc.</u>, 675 F.3d 1324, 1330 (Fed. Cir. 2012). Even if a Specification has only one embodiment, its claim will not be confined to that example "unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 358 F.3d 898, 906 (Fed. Cir. 2004).

The Specification provides a variety of examples of organic material and identifies wood sawdust as the preferred embodiment. Kowalski did not clearly limit the claim scope of organic material to the specific examples suggested by Plaintiffs and Defendant Anova Inc. An ordinarily skilled artisan would understand the meaning of "carbon-containing material" as used in the 401 Patent. <u>Ancora Technologies, Inc. v. Apple, Inc.</u>, __ F.3d __, 2014 WL 803104, *6-7 (Fed. Cir. Mar. 3, 2014).

### 2.   Extrinsic Evidence

In <u>Kowalski v. Mommy Gina Tuna Resources, et al.</u>, Civ. Nos. 05-00679BMK, 06-00182BMK, 05-00787BMK, the Judge construed the term "organic material" in the '401 Patent.

(Ex. 3 at pp. 21-22, ECF No. 288).   The Judge construed the term to mean "carbon containing materials, including wood, wood sawdust, and charcoal."   <u>Id.</u>   The Court here finds it unnecessary to include particular carbon-containing materials, as it could be construed as a limitation.


### Court's Construction of Term 8: organic material

The Court's construction of "organic material" is consistent with the intrinsic evidence and the extrinsic evidence in the record.   The term "organic material" in Claims 1, 49, 50, 60, 68, 69, 74, and 75 is construed as "carbon-containing material."


**V.          CONSTRUING TERM 9:  aging**

"Aging" is found in Claims 23, 36, 60, and 63.


| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| storing | filtering by allowing components to settle | settling flavor imparting phenols by storing for an extended period of time |


The Court construes the term "aging" as "allowing the phenols, and any other remaining carcinogens, in the smoke to

settle."


### 1.   Intrinsic Evidence

Claim terms are generally given their ordinary and
customary meaning as understood by a person of ordinary skill
in the art.  <u>Phillips</u>, 415 F.3d at 1314.  An exception applies
to the general rule when a patentee sets out a definition for
a claim term and acts as his own lexicographer.  <u>Thorner v.
Sony Computer Entm't Am. LLC</u>, 669 F.3d 1362, 1365 (Fed. Cir.
2012).

To act as its own lexicographer, a patentee must "clearly
set forth a definition of the disputed claim term" other than
its plain and ordinary meaning.  <u>Id</u>.  The Specification need
not reveal a term's definition explicitly, but may do so "by
implication."  <u>Astrazeneca LP v. Apotex, Inc.</u>, 633 F.3d 1042,
1051 (Fed. Cir. 2010).

Plaintiff Kowalski acted as his own lexicographer when he
defined the aging process in the Summary of the Invention
section of the '401 Patent.  <u>Thorner</u>, 669 F.3d at 1365.  The
'401 Patent explains that "allowing the phenols, and any other
remaining carcinogens, in the smoke to settle, or 'age,' in
the inner accordion bladder or in storage canisters for future
use, is the final backup filtering step in the process.  It is

30

analogous to sediment settling in wine making." (Ex. 1, '401 Patent at 14:19-23, ECF No. 288).  Plaintiff Kowalski clearly expressed an intent to define "aging" as a specific process distinct from the ordinary meaning of the term.

Each of the Parties' attempts to construe the term "aging" go beyond the definition provided by Kowalski in the patent.  Plaintiffs' proposed construction alters the language used by Kowalski in defining the process.  Both Defendants recognize that Kowalski defined "aging" in the patent. Defendant Anova Inc's proposed construction does not track the language used by Plaintiff Kowalski.  Defendant Anova LLC seeks to add limitations from the preferred embodiment.

The definition of the term "aging" does not need to include the parameters for use of the smoke as contemplated in the Specification.  CollegeNet, Inc., 418 F.3d at 1231.  The term is construed based on Plaintiff Kowalski acting as his own lexicographer.  AIA Engineering Ltd. v. Magotteaux Intern. S/A, 657 F.3d 1264, 1276-77 (Fed. Cir. 2011) (finding that the specification revealed that the patentee acted as his own lexicographer).

### 2.   Extrinsic Evidence

The Parties have not pointed to any persuasive extrinsic

31

evidence for the term "aging."

### Court's Construction of Term 9: aging

The Court's construction of "aging" is based on Plaintiff Kowalski acting as his own lexicographer.  The term "aging" in Claims 23, 36, 60, and 63 is construed as "allowing the phenols, and any other remaining carcinogens, in the smoke to settle."

## VI.      CONSTRUING TERM 10:      filtering

"Filtering" is found in Claims 11, 69, and 75.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| separating out or reducing, including but not limited to by cooling, condensing, settling out, and/or aging, and/or by bringing the smoke into contact with other compounds or substances | Reducing | Joins in the requested claim construction of Anova Inc |

The Court construes the term "filtering" as "a broadly-defined process including not only passing a gas or liquid through a porous material, but also the cooling and settling

of the smoke."

### 1.   Intrinsic Evidence

The "ordinary" meaning of a term should speak for itself, and the court should avoid paraphrasing claim language with less accurate terminology.  U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997).

Defendant Anova Inc's proposed constructions merely paraphrases the term "filtering."  Paraphrasing the term fails to consider the broad description of the term in the Specification.  The Specification explains "filtering" in broad terms as a process that includes "cooling" and "settling."  (Ex. 1, at 8:24-26, 14:19-23, 18:33-34, 19:43, ECF No. 288).  Plaintiffs' proposed construction considers the broad use of the term but imports too many descriptions into its proposed definition.

### 2.   Extrinsic Evidence

Extrinsic evidence may aid claim construction but it cannot be used to contradict the plain and ordinary meaning of a claim term as defined within the intrinsic record.  Phillips, 415 F.3d at 1322-23.

Plaintiffs point to a prior construction order in the

Kowalski v. Mommy Gina Tuna Resources, et al., case as support
for its proposed definition.  (Plaintiffs' Claim Construction
Brief, ECF No. 288 at p. 37-38).  In Mommy Gina Tuna
Resources, the Judge found that the Specification as a whole
referred to filtering as a process that included both the
cooling and settling processes.  (Ex. 3 at pp. 22-24, ECF No.
288).  The Judge construed "filtering" as "a broadly-defined
process including not only passing a gas or liquid through a
porous material, but also the cooling and settling of the
smoke."  (Id. at p. 24).

     The prior construction of "filtering" is relevant and
persuasive extrinsic evidence.  V-Formation, Inc., 401 F.3d at
1312.

### Court's Construction of Terms 10: "filtering"

     The Court's construction of the term "filtering" is
entirely consistent with the intrinsic evidence in the record.
The Court adopts the previous construction of the term
"filtering" as found in the  Kowalski v. Mommy Gina Tuna
Resources, et al. case.  "Filtering" in Claims 11, 69, and 75
is construed as "a broadly-defined process including not only
passing a gas or liquid through a porous material, but also
the cooling and settling of the smoke."

34

VII.                 CONSTRUING TERMS 11-18

Terms 11-18 all concern the process for removing, reducing, filtering, or eliminating the taste, odor, or flavor components from the smoke in the '401 Patent.  The Parties grouped the terms together and addressed them collectively as each phrase describes a similar process.  The legal arguments for the related terms are the same.  The proposed constructions are very similar.

The terms are divided into four sections:

          (1) The Reducing Terms;

          (2) The Removing Terms;

          (3) The Filtering Term; and

          (4) The Eliminating Terms.

Just as in the construction of the adjective "smoke," Defendants are attempting to expand the definition of all of the claim terms 11 through 18.


     **(1)  The Reducing Terms**

        **TERM 11:  "Reduce taste imparting components below thresholds for imparting smoke odor and taste" is found in Claims 1 and 74**

        **TERM 12:  "Reduce taste and odor imparting particulates and vapors below taste and odor recognition thresholds" is found in Claim 60.**

35

TERM 13:   "Reduce particulate and vapor phenols below
taste and odor recognition thresholds" is
found in Claim 63

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| reduce the taste causing parts of that smoke at least enough so the aforesaid smoke would not cause meat to end up with a smoked or smoky odor or taste if the meat is treated with that smoke | reduce all taste imparting components in the smoke to concentrations below those that will impart to the smoke any perceptible odor or taste | reduce all taste imparting components below thresholds for imparting smoke odor and taste |
| reduce the taste and odor giving particles and vapors at least enough so that the aforesaid smoke would not cause the seafood to end up with a smoked or smoky odor or taste if the seafood is treated with that smoke | reduce all taste and odor imparting particulates and vapors in the smoke to concentrations below those that will impart to the smoke any perceptible taste or odor | reduce all taste imparting components below thresholds for imparting smoke odor and taste |
| reduce the particle phenols and vapor phenols of that smoke at least enough so the aforesaid smoke would not cause seafood to end up with a smoked or smoky taste and odor if the seafood is treated with that smoke | reduce all phenols in the particulate and vapor phrases of the smoke to concentrations below those that will impart to the smoke any perceptible taste or odor | reduce all taste imparting components below thresholds for imparting smoke odor and taste |

(2)   **The Removing Terms**

TERM 14:   "Removing components that impart smoke odor
from said smoke...whereby the quantity of
smoke odor imparting components removed

from said smoke is adequate to prevent
imparting a smoke odor to said food" is
found in Claim 68.

TERM 15:   "Removing a portion of said smoke odor and
flavor imparting components...so as to
prevent smoke flavoring of said food" is
found in Claim 69.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| removing from that smoke parts of that smoke that cause smoked or smoky odor, at least enough to prevent causing food treated with that smoke to end up with a smoked or smoky odor when the food is treated with that smoke | removing all odor imparting components in the smoke to concentrations below those that will impart to the smoke any perceptible odor | removing all taste imparting components below thresholds for imparting smoke odor and taste |
| remove at least enough of those smoked or smoky odor and flavor causing components so that when the food is exposed to that filtered smoke that food does not end up with smoked or smoky flavoring | remove all odor and flavor imparting components in the smoke to concentrations below those that will impart to the smoke any perceptible odor or flavor | remove all taste imparting components below thresholds for imparting smoke odor and taste |

(3)   **The Filtering Term**

TERM 16:   "Filtering components that impart smoke
flavor from said smoke to below limits for
imparting smoke flavoring to food...without
imparting a smoke flavor to said food...to
concentrations below odor and taste
recognition thresholds for imparting a
smoke flavor to the meat" is found in Claim
75.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|

| filtering parts that give smoked or smoky flavor from that smoke at least enough so that smoke would not cause meat to end up with a smoked or smoky flavoring, and exposing that filtered smoke to food without giving a smoked or smoky flavor to that food so that the resulting or remaining smoke would not cause the treated meat to end up with a smoked or smoky flavor when the meat is treated with that smoke | reducing all flavor imparting components in the smoke to concentrations below those that will impart to the smoke any perceptible flavor | filtering all taste imparting components below thresholds for imparting smoke odor and taste |

### (4)   The Eliminating Terms

**TERM 17:** "Eliminating said smoke taste compounds from said smoke; and treating meat with said smoke; whereby said treated meat does not have a smoky taste" is found in Claim 49.

**TERM 18:** "Eliminating smoke taste compounds from said smoke; treating meat with said smoke; and whereby said treated meat does not retain a smoky taste" is found in Claim 50.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |

38

| | | |
|---|---|---|
| getting rid of those smoked or smoky taste compounds from that smoke at least enough so that when you treat meat with that smoke the meat does not end up with a smoky taste | removing all smoke taste imparting compounds in the smoke so that none remain in the smoke, and then treating meat with the smoke from which all smoke taste imparting compounds have been removed | eliminating all taste imparting components below thresholds for imparting smoke odor and taste |
| getting rid of smoked or smoky taste compounds from the aforesaid smoke; treating meat with the aforesaid smoke; and whereby that treated meat does not keep or hold or end up with a smoky taste | removing all smoke taste imparting compounds in the smoke so that none remain in the smoke, and then treating meat with the smoke from which all smoke taste imparting compounds have been removed | eliminating all taste imparting components below thresholds for imparting smoke odor and taste |

The plain and ordinary meaning of Terms 11-18 is sufficient.

### 1.   Intrinsic Evidence

#### a.   Claim Terms

Claims must be construed in light of the appropriate context in which the claim term is used.   <u>Aventis Pharmaceuticals Inc.</u>, 715 F.3d at 1373.   The "ordinary" meaning of a term should speak for itself, and the court should avoid paraphrasing claim language with less accurate terminology.   <u>U.S. Surgical Corp.</u>, 103 F.3d at 1568.   When the plain and ordinary meaning of a claim term is sufficient and

it needs no further construction, the limitations proposed by the opposing party do not apply and that party will not be permitted to represent to a jury that such a limitation exists.  02 Micro Int'l Ltd., 521 F.3d at 1360; Symantec Corp. v. Acronis, Inc., 2014 WL 230023, *4, (N.D. Cal. Jan. 21, 2014).

The Federal Circuit Court of Appeals has found that Courts should not delineate terms of degree when the patent provides no such standard.  Exxon Research and Eng'q Co. v. United States, 265 F.3d 1371, 1381 (Fed. Cir. 2001); Playtex Prods., Inc. v. Procter & Gamble Co., 400 F.3d 901, 907 (Fed. Cir. 2005).

Defendants seek to construe Terms 11-18 without considering the context of each of the claim terms.  Terms 11-18 refer to the process in the Kowalski Patent that creates a tasteless smoke.  Claims 1 and 74 refer to the process as creating a "substantially" tasteless smoke.  (Ex. 1, '401 Patent at Claim 1; Reexamination Certificate at Claim 74). Defendants seek to construe the terms referring to the "substantially tasteless" smoke to mean the smoke is completely tasteless.  Defendants request a construction where *all* smoke, odor, taste, or flavor is removed in the Kowalski Patent's process.  This construction is contrary to the claim

40

language.

Defendants have not cited to a case where a court construed a "term of degree" such as "substantially" to mean "zero" or "all."  See Glaxo Group Ltd. v. Ranbaxy Pharms, Inc., 262 F.3d 1333, 1337 (Fed. Cir. 2001) (finding the phrase "essentially free of crystalline material" could be properly construed as requiring a crystalline content of less than 10% based on the applicant's statements describing the prior art"); Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc., 249 F.3d 1341, 1347 (Fed. Cir. 2001) (construing the term "substantially water free" as having a water content below 5% in accordance with statements during the prosecution history and distinguishing a prior art reference having a water content from 5% to 30%).

The Federal Circuit Court of Appeals has found on numerous occasions that the courts should not construe terms such as "substantially" to a precise numeric constraint. Cordis v. Medtronic AVE, Inc., 339 F.3d 1352, 1361 (Fed. Cir. 2003) (refusing to impose a precise numeric constraint on the term "substantially uniform thickness"); Anchor Wall Sys. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1311 (Fed. Cir. 2003) (explaining that "substantially" is a descriptive term commonly used in patent claims to avoid a strict numerical

41

boundary to the specified parameter); <u>PPG Induc. V. Guardian Indus. Corp.</u>, 156 F.3d 1351, 1355 (Fed. Cir. 1998) ("claims are often drafted using terminology that is not as precise or specific as it might be....That does not mean, however, that a court, under the rubric of claim construction, may give a claim whatever additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product").

Claims 60, 63, 68, 69, and 75 cover the same subject matter as Claims 1 and 74. <u>Curtiss-Wright Flow Control Corp.</u>, 438 F.3d at 1380. The Claim Terms themselves demonstrate that the process in the '401 Patent does not reduce, remove, filter, or eliminate *all* odor, taste, or flavor from the smoke.

### b. The Specification

Statements that describe the invention as a whole are more likely to support a limiting definition of a claim term. <u>C.R. Bard, Inc.</u>, 388 F.3d at 864.

The Specification describes the '401 Patent, as a whole, as intending to produce seafood that appears and tastes "similar" to fresh after it is frozen and thawed. (Ex. 1, '401 Patent at 1:30). The Specification does not claim that *all* odor, taste, and flavor are removed in the process. As

42

Plaintiffs argued during the <u>Markman</u> hearing, the process is intended to create a food product that tastes similar to fresh but not identical to fresh.

The '401 Patent in the Specification, just as in the Claim Terms, refers to smoke as being "substantially tasteless."   (Ex. 1, '401 Patent at 13:13, 17:14, 19:62, ECF No. 288).  The Specification explains that "recognition thresholds vary with the olfactory and taste senses of each individual." <u>Id.</u> at 17:14-20. Plaintiff Kowalski would not have included the word "substantially" or the disclaimer regarding recognition thresholds if the patent covered a process where all taste, flavor, and odor components were removed.  The Specification does not support Defendants' proposed constructions.

### c.   Prosecution History

Kowalski referred to the '401 Patent as reducing "substantially" all taste imparting particulates and vapors throughout the Prosecution History.

In the March 30, 1998 Petition to Make Special, Kowalski distinguished the '401 Patent from the Yamaoka Patent. Kowalski explained that the Yamaoka Patent "does not anticipate the present invention because it does not meet the limitation of reducing <u>substantially</u> all taste imparting

43

particulates and vapors below recognition thresholds for odor and taste." (Ex. B at p. 114, ECF No. 287) (emphasis added). Kowalski emphasized the purpose of the '401 Patent was to "remove <u>substantially</u> all taste imparting components." (<u>Id.</u> at p. 115) (emphasis added).  In the July 28, 1998 Petition to Make Special, Kowalski again distinguished his patent from prior art because the Yamaoka Patent "does not meet the limitation of reducing <u>substantially</u> all taste imparting particulates and vapors." (<u>Id.</u> at p. 131) (emphasis added).

During the <u>Markman</u> hearing, Defendants pointed to a single instance in the Prosecution History where Kowalski omitted the word "substantially." (ECF No. 287 at p. 122). The one instance of failing to include "substantially" in the Prosecution History does not demonstrate that the '401 Patent creates a smoke without any taste, odor or flavor.  The omission of one use of "substantially" cannot be a basis of ignoring the otherwise continual use of "substantially" in the Claims, the Specification, and the Prosecution History.  The Intrinsic Evidence does not support Defendants' claim construction for the terms relating to the process of creating super-purified smoke in the '401 Patent.


### 2.   Extrinsic Evidence

44

Defendant's proposed constructions conflict with the previous constructions of terms in Claims 1, 68, and 69.  In Kowalski v. Mommy Gina Tuna Resources, et al., Civ. Nos. 05-00679BMK, 06-00182BMK, 05-00787BMK, the Judge construed "reduce taste imparting components below thresholds for imparting smoke odor and taste" from Claim 1 as "reduce the taste imparting components (i.e., parts) of the generated (i.e., produced) smoke at least enough so that the resulting or remaining smoke would not give smoke odor and taste to meat."  (Ex. 21 at p. 2, ECF No. 288).  The Judge did not find that the claim term covered a process where the smoke did not give "any" odor or taste to meat as proposed by Defendants.

In the previous construction in Mommy Gina Tuna Resources, the Judge construed one of the removing terms. (Id.)  The Judge construed the term "removing components that impart smoke odor from said smoke...whereby the quantity of smoke odor imparting components removed from said smoke is adequate to prevent imparting a smoke odor to said food" from Claim 68.  The Judge construed the term as a process "whereby the amount of [']smoke odor giving parts['] that were removed is sufficient to prevent giving a smoke odor to the food." (Ex. 21 at p. 4, ECF No. 288).    The previous construction of the Kowalski Patent provides no support for Defendants'

45

position that Terms 11-18 should be construed to cover a process where all odor, taste, and flavor was removed, reduced, filtered, or eliminated from the smoke.

### The Court's Construction of Terms 11-18

Defendants' proposed constructions of Terms 11-18 are contrary to both the Intrinsic and the Extrinsic Evidence in the record.

Plaintiffs' proposed constructions are unnecessary and confusing. Bd. Of Regents of the Univ. Of Tex. Sys., 533 F.3d at 1370. Plaintiffs' constructions do not consider the context of the terms in the Claims themselves. Aventis Pharmaceuticals Inc., 715 F.3d at 1373. It is inappropriate to paraphrase Claim Terms with less precise descriptions. U.S. Surgical Corp., 103 F.3d at 1568.

The Court declines to construe Terms 11-18 any further than their plain and ordinary meaning. Defendants' arguments relating to their proposed constructions are rejected and may not be presented to the jury. 02 Micro Int'l Ltd., 521 F.3d at 1360; Symantec Corp. v. Acronis, Inc., 2014 WL 230023, *4, (N.D. Cal. Jan. 21, 2014). A person of ordinary skill in the art would understanding the terms as used in the patent. Allvoice Computing PLC, v. Nuance Communications, Inc., 504

46

F.3d 1236, 1242 (Fed. Cir. 2007) (explaining that the record shows that an artisan of ordinary skill would understand the bounds of the claim when read in light of the patent).

**VIII.     CONSTRUING TERM 19:       different time and place**

"Different time and place" is found in Claim 44.

| Plaintiffs' Construction | Anova Inc's Construction | Anova LLC's Construction |
|---|---|---|
| not as one continuous, uninterrupted flow operation, e.g., where the manufactured smoke is put in a storage container and used for treatment later and/or used in a different location unconnected to the smoke generation equipment | No need for construction | Joins in the requested claim construction of Anova Inc |

The plain and ordinary meaning of the term "different time and place" is sufficient.

**1.   Intrinsic Evidence**

**a.   Claim Terms**

Claim terms must be construed in light of the appropriate

47

context in which they are used.  Aventis Pharmaceuticals Inc.,
715 F.3d at 1373.  Claim 44 is a claim dependent on Claims 1
through 3.  Claim 44 provides that the steps for creating
smoke are carried out at a "different time and place" than the
steps for treating the food with the smoke.  Claims 23, 36,
and 37 are also dependent on Claims 1 through 3.  Claims 23,
36, and 37 provide for specific time durations between
creating the smoke and treating the food.  Claims 60 and 63
also describe specific time durations between the creation of
the smoke and the treatment of the food.

It is clear based on the Claims themselves that the '401
Patent covers a process where the creation of the smoke and
the treatment of the food may be performed at a "different
time and place."

### b.    The Specification

Even preferred embodiments that contain a particular
limitation are insufficient to limit a claim term beyond its
ordinary meaning.  Aventis Pharma S.A., 675 F.3d at 1330.

The Abstract in the '401 Patent states that the smoke may
be used to treat food "at the same time or at another place
and time."  (Ex. 1, '401 Patent at Abstract, ECF No. 288).
The Specification explains that the '401 Patent covers a
process where the creation of smoke is performed at "another

48

time or place" than the treatment of the food with the smoke.

(Id. at 1:43, 15:12, 21:15, The Specification states:

> If treatment at another time or place is desired
> the aging process continues in storage canisters and
> the flavor imparting phenol levels decline even
> further through decomposition.  However, these
> canisters can not be kept indefinitely, since
> phenols that have a beneficial preservative effect
> will begin to degrade as well.  Treatment from
> canisters may be done after one hour of aging and
> preferably within one year of aging.  Therefore, the
> use of tasteless super-purified smoke does not have
> to correspond to the operation of the smoke
> manufacturing part of the process allowing for much
> flexibility and versatility industry wide.

(Ex. 1, '401 Patent at 14:41-51, ECF No. 288).

The Specification indicates the preferred "different

time" for food treatment is after one hour but within one year

of aging the smoke.  Id.  The Specification states that the

smoke cannot be kept "indefinitely."  Id.

The particular embodiment does not limit the construction

of the term "different time and place."  Aventis Pharma S.A.,

675 F.3d at 1330.  The Specification makes clear that the

location and durations for completing the process covered by

the '401 Patent is intended to be applied with "much

flexibility and versatility."  (Ex. 1, '401 Patent at 14:41-

51, ECF No. 288).

### c.   Prosecution History

A patentee may limit the meaning of a claim term by

making a clear and unmistakable disavowal of scope during

prosecution.   Purdue Pharma L.P., 438 F.3d at 1136.

Kowalski's initial application submitted for the '401 Patent indicates that the processes for creating the smoke and treating the food may be done "at the same time or at another place and time." (Ex. B at pp. 25, 27, 47, 49, 61, ECF No. 287).  The Prosecution History states that one object of the invention was "to store the tasteless super-purified smoke in either a temporary storage vessel or to pump it into canisters kept at ambient room temperature for future treatment of seafood (and other meat, and meat products)." (Id. at p. 30). The initial application in the Prosecution History makes clear that "the use of tasteless super-purified smoke does not have to correspond to the operation of the smoke manufacturing part of the process." (Id. at p. 50).


### 2.   Extrinsic Evidence

Extrinsic evidence may aid claim construction but it cannot be used to contradict the plain and ordinary meaning of a claim term as defined within the intrinsic record. Phillips, 415 F.3d at 1322-23.

The plain and ordinary meaning is sufficient and the Court need not look to extrinsic evidence when the terms is defined within the intrinsic record.  The Specification

provides for optimal durations in time for the processes of aging, treating, and storing the meat and the smoke.  (Ex. 1, '401 Patent at 14:24-33; 19-22, ECF No. 288).  The Specification explains that the canisters containing the smoke "can not be kept indefinitely, since phenols that have a beneficial preservative effect will begin to degrade."  (Id. at 14:44-46).  A person of ordinary skill in the art would not believe the Kowalski patent created a process for producing smoke that could be kept indefinitely to treat food.

A person of ordinary skill in the art can understand the term "different time and place" in the context of the '401 patent.  Allvoice Computing PLC, 504 F.3d at 1242.


**Court's Construction of Term 19**

A claim term should be given its ordinary meaning unless the patentee has made clear its adoption of a different definition or otherwise disclaimed its ordinary meaning. Ancora Technologies, Inc., 2014 WL 803104, at *2.

The plain and ordinary meaning of the term "a different time and place" is sufficient.


**CONCLUSION**

The Court construes the disputed terms as follows:

51

**(1)**  "Smoke odor" is construed as "smoked or smoky odor."

**(2)**  "Smoke taste" is construed as "smoked or smoky taste."

**(3)**  "Smoke flavor" is construed as "smoked or smoky flavor."

**(4)**  "Smoke flavoring" is construed as "smoked or smoky flavoring."

**(5)**     "Smoke" is construed as "the emissions from heating an organic material."

**(6)**  "Heating" is given its plain and ordinary meaning.

**(7)**  "Burning" is given its plain and ordinary meaning.

**(8)**  "Organic material" is construed as "carbon-containing material."

**(9)**  "Aging" is construed as "allowing the phenols, and any other remaining carcinogens, in the smoke to settle."

**(10)**     "Filtering" is construed as "a broadly-defined process including not only passing a gas or liquid through a porous material, but also the cooling and settling of the smoke."

**(11)**     "Reduce taste imparting components below

thresholds for imparting smoke odor and taste"
is given its plain and ordinary meaning.

(12)   "Reduce taste and odor imparting particulates
and vapors below taste and odor recognition
thresholds" is given its plain and ordinary
meaning.

(13)   "Reduce particulate and vapor phenols below
taste and odor recognition thresholds" is given
its plain and ordinary meaning.

(14)   "Removing components that impart smoke odor from
said smoke...whereby the quantity of smoke odor
imparting components removed from said smoke is
adequate to prevent imparting a smoke odor to
said food" is given its plain and ordinary
meaning.

(15)   "Removing a portion of said smoke odor and
flavor imparting components...so as to prevent
smoke flavoring of said food" is given its plain
and ordinary meaning.

(16)   "Filtering components that impart smoke flavor
from said smoke to below limits for imparting
smoke flavoring to food...without imparting a
smoke flavor to said food...to concentrations

53

below odor and taste recognition thresholds for imparting a smoke flavor to the meat" is given its plain and ordinary meaning.

**(17)**    "Eliminating said smoke taste compounds from said smoke; and treating meat with said smoke; whereby said treated meat does not have a smoky taste" is given its plain and ordinary meaning.

**(18)**    "Eliminating smoke taste compounds from said smoke; treating meat with said smoke; and whereby said treated meat does not retain a smoky taste" is given its plain and ordinary meaning.

**(19)**    "A different time and place" is given its plain and ordinary meaning.

IT IS SO ORDERED.

Dated:    March 31, 2014, Honolulu, Hawaii.



_/s/ Helen Gillmor_____

Helen Gillmor
United States District Judge

William R. Kowalski; Hawaii International Seafood, Inc., v. Anova Food, LLC; Clearsmoke Technologies, LTD; Does 1-10; Anova Food, Inc.; Civil No. 11-00795HG-BMK; **CLAIM CONSTRUCTION ORDER**                    54